NO. 20-15539

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

BAERBEL MCKINNEY-DROBNIS, *et al.*,
*Plaintiffs-Appellees,*

Kurt Oreshack,
*Objector-Appellant,*

v.

MASSAGE ENVY FRANCHISING, LLC,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California, No. 3:16-cv-06450-MMC

Opening Brief of Appellant Kurt Oreshack

HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
Theodore H. Frank
Adam E. Schulman
1629 K St. NW, Suite 300
Washington, D.C. 20006
(703) 203-3848
*Attorneys for Objector-Appellant Kurt Oreshack*

# Table of Contents

Table of Contents ......................................................................................... i

Table of Authorities ................................................................................... iii

Statement of Subject Matter and Appellate Jurisdiction................................ 1

Statement of the Issues ................................................................................ 1

Standard of Review ..................................................................................... 3

Statutes and Rules....................................................................................... 5

Statement of the Case .................................................................................. 8

    A.    The class complaint and pre-settlement litigation. ...................... 8

    B.    The settlement and fee request................................................. 9

    C.    Oreshack objects. ................................................................. 10

    D.    The district court refuses to apply CAFA, refuses to investigate the *Hahn* redemption rate, and approves the settlement and attorneys' fee award................................................................................ 11

Summary of Argument ............................................................................... 13

Preliminary Statement and Introduction ..................................................... 16

Argument................................................................................................... 17

I.    The district court erred as a matter of law in valuing the settlement relief at the vouchers' face value instead of their economic reality, and approved an impermissibly disproportionate settlement. ................................... 17

    A.    An unfair allocation between the class and class counsel violates Rule 23 because courts have a duty to protect the absent class members from the inherent agency problems in the settlement process. ............................................................................... 17

    B.    Courts must reject settlements with illusory relief that obscures the true unfair *allocation* of the class relief. ............................. 19

II.    The district court's error in valuing the coupons in this settlement led to reversible error of approving the settlement and attorney award...................... 28

    A.    The lower court should have applied CAFA. ........................... 28

1. The "vouchers" expire in eighteen months and can only be used for Massage Envy's limited inventory of spa-related services and 251 products. They do not fit within *Online DVD*'s narrow exception to CAFA for nonpecuniary relief that is "equivalently useful" to cash. .................................................... 28

2. The settling parties' other stated reasons against applying CAFA are baseless. ................................................................................. 36

B. Because CAFA applies, the district court erred as a matter of law in valuing the coupons at face value and assuming a 100% redemption rate. ................................................................................................ 38

C. *Online DVD* is wrong and an *en banc* court should overturn it. ............... 40

III. Independent of CAFA, the district court committed reversible error in approving a settlement that exhibits preferential treatment to class counsel. ............................................................................................ 43

A. Because the kicker segregated class counsel's fees from class recovery, deprived the court of the power to reallocate the award between the class and class counsel, and cost the class nearly $700,000, the settlement violates Rule 23(e). .................................. 44

B. The district court erred in focusing on collusion, rather than on whether counsel's self-interest has affected the terms of settlement. ...... 47

C. The district court erred in shifting the burden to the objector to prove settlement unfairness. ....................................................... 48

D. The "clear sailing" provision requires scrutiny because it can mask a misallocated settlement. ........................................................... 48

Conclusion ............................................................................................. 49

Statement of Related Cases pursuant to Circuit Rule 28-2.6 ........................ 51

Certificate of Compliance with Circuit Rule 32-1 ...................................... 52

Proof of Service ...................................................................................... 53

# Table of Authorities

Cases

*Allen v. Bedolla*,
 787 F.3d 1218 (9th Cir. 2015)............................. 1-2, 13, 15, 17, 20, 22, 25, 44, 48

*In re Bluetooth Headset Prod. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011)..........................................2-4, 15, 17-22, 44-45, 47-49

*Dardarian v. OfficeMax N. Am., Inc.*,
 No. 11-cv-00947-YGR
 2013 U.S. Dist. LEXIS 98653 (N.D. Cal. Jul. 12, 2013) .................................30-31

*Davis v. Cole Haan, Inc.*,
 No. 11-cv-01826-JSW,
 2015 U.S. Dist. LEXIS 153434 (N.D. Cal. Nov. 12, 2015) ................................. 23

*Dennis v. Kellogg Co.*,
 697 F.3d 858 (9th Cir. 2012) ........................................................ 19-20, 44

*Devlin v. Scardelletti*,
 536 U.S. 1 (2002) ..................................................................................... 1

*In re Dry Max Pampers Litig.*,
 724 F.3d 713 (6th Cir. 2013) (*"Pampers"*) ...................................2, 17, 19, 22-23, 48

*In re EasySaver Rewards Litig.*,
 906 F.3d 747 (9th Cir. 2018)...........................2, 4, 14-15, 28, 30, 32-35, 37, 39-40

*Galloway v. Kan. City Landsmen, LLC*,
 No. 4:11-1020-cv-W-DGK,
 2012 U.S. Dist. LEXIS 147148 (W.D. Mo. Oct. 12, 2012)................................. 23

*In re GMC Pick-Up Fuel Tank Prods. Liab. Litig.*,
 55 F.3d 768 (3d Cir. 1995) ........................................................................ 45

*Hahn v. Massage Envy Franchising, LLC*,
 No. 12-cv-00153-DMS (BGS) (S.D. Cal.)................................................. 11, 24-25

*Hendricks v. Ference*,
 754 Fed. Appx. 510 (9th Cir. 2018) .................................................................41-43

*In re HP Inkjet Printer Litig.*,
716 F.3d 1173 (9th Cir. 2013) ("*Inkjet*") .................................. 13, 28-31, 36, 38-39

*Johnson v. Comerica Mortgage Corp.*,
83 F.3d 241 (8th Cir. 1996) ................................................................. 45

*K.C. v. Torlakson*,
762 F.3d 963 (9th Cir. 2014) ................................................................. 4

*Khatib v. County of Orange*,
639 F.3d 898 (9th Cir. 2011) ............................................................... 30

*Knapp v. Art.com*,
283 F. Supp. 3d 823 (N.D. Cal. 2017) ...........................23, 30, 32-33, 39

*Koby v. ARS Nat'l Servs.*,
846 F.3d 1071 (9th Cir. 2017) ...................................................14, 22, 25

*Laffitte v. Robert Half Int'l*,
376 P.3d 672 (Cal. 2016) ..................................................................... 18

*In re Lithium Ion Batteries Antitrust Litig.*,
777 Fed. Appx. 221 (9th Cir. 2019) ..................................................... 16

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*,
952 F.3d 471 (4th Cir. 2020) ....................................................... 33, 36-37

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) .............................................................18-19

*In re Mexico Money Transfer Litig.*,
267 F.3d 743 (7th Cir. 2001) ............................................................... 29

*Nachshin v. AOL LLC*,
663 F.3d 1034 (9th Cir. 2011) .............................................................3-4

*Pearson v. NBTY Inc.*,
772 F.3d 778 (7th Cir. 2014) ................................... 2, 16, 19, 22, 45-46, 48

*In re Online DVD Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ("*Online DVD*")............2-3, 14-15, 30-35, 37, 40-43

*Radcliffe v. Experian Info. Solutions*,
715 F.3d 1157 (9th Cir. 2013) ................................................................. 18

*Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014) ................................................. 19, 42, 48-49

*Roes v. SFBSC Mgmt., LLC*,
944 F.3d 1035 (9th Cir. 2019) ...................2-4, 13, 15, 17-23, 25-27, 44-45, 47-49

*Rollins v. Dignity Health*,
No. 13-cv-01450,
2019 WL 8165915, 2019 U.S. Dist. LEXIS 228566
(N.D. Cal. Oct. 28, 2019) ...................................................................... 46

*Rougvie v. Ascena Retail Grp., Inc.*,
No. 15-cv-724,
2016 U.S. Dist. LEXIS 99235 (E.D. Pa. July 29, 2016) ....................................... 39

*Seegert v. Lamps Plus, Inc.*,
377 F. Supp. 3d 1127 (S.D. Cal. 2018) ................................................. 30, 33

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .............................................................45, 47, 49

*Synfuel Techs, Inc. v. DHL Express (USA)*,
463 F.3d 646 (7th Cir. 2006) ......................................................... 31, 41

*True v. Am. Honda Co.*,
749 F. Supp. 2d 1052 (C.D. Cal. 2010) .................................................... 29

*United States v. Havelock*,
664 F.3d 1284 (9th Cir. 2012) ................................................................. 4

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ................................................................. 19

Rules and Statutes

28 U.S.C. §1291 ................................................................................. 1

28 U.S.C. §1332(d) ............................................................................. 1

28 U.S.C. §1332(d)(2) ............................................................................ 1

28 U.S.C. §1332(d)(10) .......................................................................... 1

28 U.S.C. §1712 ...................................................... 2-3, 8, 10, 14, 28-29, 35-36

28 U.S.C. §1712(a) ................................................................. 28, 38-40

28 U.S.C. §1712(c) ................................................................................ 39

28 U.S.C. §1712(d) ............................................................................... 29

Fed. R. App. P. 4(a)(1)(A) .................................................................... 1

Fed. R. Civ. Proc. 23 ......................................................................... 17

Fed. R. Civ. Proc. 23(e) .............................................................. 8, 27, 44

Fed. R. Civ. Proc. 23(e)(2)(C) ......................................................... 12

Fed. R. Civ. Proc. 23(e)(2)(C)(ii) .................................................... 22

Fed. R. Civ. Proc. 23(e)(2)(C)(iii) ................................... 1, 38, 43-44

N.D. Cal. Procedural Guidance for Class Action Settlements .................... 25

Other Authorities

American Heritage Dictionary of the English Language
    (5th ed., Houghton Mifflin Harcourt Publishing Company 2017) ................... 30

"Boy Scoutz 'n the Hood," The Simpsons (Nov. 18, 1993) ............................... 41

Brickman, Lester,
    Lawyer Barons (2011) ................................................................. 46

Cacciola, Scott,
    West Looms as Knicks Keep Going South,
    N.Y. Times (Nov. 23, 2013) .......................................................... 31

Editorial Board,
   *The Anthem Class-Action Con*,
   WALL ST. J. (Feb. 18, 2018) ...................................................... 16

Erichson, Howard,
   *Aggregation as Disempowerment*,
   92 NOTRE DAME L. REV. 859 (2016) ........................................ 20

Erichson, Howard M.,
   *How to Exaggerate the Size of Your Class Action Settlement*,
   DAILY JOURNAL (Nov. 8, 2017) ............................................. 20

Estes, Andrea,
   *Critics hit law firms' bills after class-action lawsuits*,
   BOSTON GLOBE (Dec. 17, 2016) ............................................. 16

Hantler, Steven B. & Robert E. Norton,
   *Coupon Settlements: The Emperor's Clothes of Class Actions*,
   18 GEO. J. LEGAL ETHICS 1343 (2005) .................................... 23

Leslie, Christopher R.,
   *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer
   Class Action Litigation*,
   49 UCLA L. REV. 991 (2002) ......................................... 13, 29

Liptak, Adam,
   *When Lawyers Cut Their Clients Out of the Deal*,
   N.Y. TIMES (Aug. 13, 2013) ................................................. 16

MANUAL FOR COMPLEX LITIGATION § 21.71 (4th ed. 2008) ......................... 45

S. Rep. No. 109-14 (2005),
   *reprinted in* 2005 U.S.C.C.A.N. 3 ................................... 28, 31

Erin L. Sheley & Theodore H. Frank,
   *Prospective Injunctive Relief and Class Settlements*,
   39 HARV. J. L. & PUB. POL. 769 (2016) .................................... 21

Silver, Charles,
   *Due Process and the Lodestar Method: You Can't Get There from Here*,
   74 TUL. L. REV. 1809 (2000) ............................................. 46

Tharin, James & Brian Blockovich,
    *Coupons and the Class Action Fairness Act*,
    18 GEO. J. LEGAL ETHICS 1443 (2005) ................................................................. 23

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1988) ....................................30-31

## Statement of Subject Matter and Appellate Jurisdiction

The district court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because plaintiffs' amended complaint alleges that plaintiffs and defendant Massage Envy Franchising LLC are members of different states, and the complaint alleges claims that exceed $5,000,000, exclusive of interests and costs. ER192. For example, named plaintiff Baerbel McKinney-Drobnis is a citizen of California, while Massage Envy is a Delaware limited liability company with its principal place of business in Arizona. ER193-95; *cf.* 28 U.S.C. § 1332(d)(10) (citizenship of LLCs under § 1332(d)).

This court has appellate jurisdiction under 28 U.S.C. § 1291. On March 2, 2020, the district court granted final approval of the class action settlement, and entered final judgment on March 20. ER1-11. Objecting class member Kurt Oreshack filed a notice of appeal on March 26, 2020. ER79. This notice is timely under Fed. R. App. P. 4(a)(1)(A). Oreshack, as a class member who objected to settlement approval below, has standing to appeal a final approval of a class-action settlement without intervening formally in the case. *Devlin v. Scardelletti*, 536 U.S. 1 (2002).

## Statement of the Issues

1.      Courts deciding whether to approve a settlement must consider, among other things, whether the settlement relief is adequate in relation to "the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). Rule 23 also requires a district court to investigate the "economic reality" of the settlement relief provided to class members in a class-action settlement. *Allen v. Bedolla*, 787 F.3d 1218, 1224 & n.4

(9th Cir. 2015); *accord Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049, 1052-55 (9th Cir. 2019). If the negotiated fees are outsized relative to the value of the actual class benefit, the court should reject the settlement as unfairly affording preferential treatment to class counsel. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944-45 (9th Cir. 2011) ("*Bluetooth*"); *accord In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014). Did the district court err in approving a settlement that awarded class counsel millions of dollars in fees based on the *face value* of the class recovery of "vouchers" rather than based on their economic reality, when there was no evidence that their redemption value would be more than what class counsel received? (Raised at ER104, ER115-119; ruled on at ER60-61, ER66-69.)

2.     The Class Action Fairness Act ("CAFA") requires courts to apply "heightened scrutiny" to settlements that award coupons to class members and base fee awards on the redemption value of coupons, rather than their face value. 28 U.S.C. § 1712; *In re EasySaver Rewards Litig.*, 906 F.3d 747, 755 (9th Cir. 2018). The Ninth Circuit has added a "limited" exception holding that CAFA does not apply to coupons, such as Walmart gift cards, that do not expire and can be used to purchase many different types of products. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 952 (9th Cir. 2015); *EasySaver*, 906 F.3d at 758 (exception applies only to coupons all class members view as "equivalently useful" as cash). Here, the settlement provided class members with "vouchers," which expire in eighteen months, and can only be used to purchase the spa-related products and services available at Massage Envy.

(a)     Did the district court err as a matter of law by refusing to apply CAFA to the settlement on grounds that the *Online DVD* exception applied, though it recognized that vouchers would expire unredeemed?

(b)     If the *Online DVD* test permits a district court to refuse to apply 28 U.S.C. § 1712 to Massage Envy vouchers, despite the ordinary meaning of "coupon," should the Ninth Circuit overrule *Online DVD en banc*?

(Raised at ER104, 111-15; ruled on at ER43-45, 59, 71.)

3.      A "clear sailing" agreement combined with a "kicker" reverting a court's reduction of class counsel's fee request to the defendant instead of the class are warning signs that class counsel pursued its own self-interest at the expensive of the class, independent of any collusion. *Bluetooth*, 654 F.3d at 944-49; *Roes*, 944 F.3d at 1050, 1059-60.

(a)     Does a settlement with a "clear sailing" clause and a "kicker" that cost the class $700,000 by reverting those funds to the defendant instead of the class for "no apparent reason" violate Rule 23(e) as a matter of law?

(b)     In the alternative, did the district court abuse its discretion or commit an error of law in approving a settlement in which all three *Bluetooth* warning signs of preferential treatment were present simply because it did not find "collusion"?

(Raised at ER115-21; ruled on at ER60, 64, 67-68.)

## Standard of Review

This Court reviews a district court's decision to approve a class-action settlement for clear abuse of discretion. *Bluetooth*, 654 F.3d at 940. "A court abuses its discretion

when it fails to apply the correct legal standard or bases its decision on unreasonable findings of fact." *Nachshin v. AOL LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011).

When, as here, the settlement precedes class certification, this Court demands "an even higher level of scrutiny" from the district court. *Roes*, 944 F.3d at 1043 (quoting *Bluetooth*, 654 F.3d at 946). This Court reviews "a pre-certification settlement approval not only for whether the district court has explored comprehensively all factors, given a reasoned response to all non-frivolous objections, and adequately developed the record to support its final approval decision, but also for whether the district court has looked for and scrutinized any subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations." *Id.* (cleaned up).

Whether the relief provided in a settlement constitutes a "coupon" under CAFA is a matter of statutory interpretation, and thus a question of law this Court reviews *de novo. E.g., United States v. Havelock*, 664 F.3d 1284, 1289 (9th Cir. 2012) (*en banc*) ("matters of statutory interpretation" are questions of law reviewed *de novo*); *K.C. v. Torlakson*, 762 F.3d 963, 966 (9th Cir. 2014) (questions "of legal analysis and statutory interpretation that figure in the district court's attorney's fee decision are reviewed *de novo*" (internal quotations omitted)); *but see EasySaver*, 906 F.3d at 755 n.5 (refraining from deciding whether to review CAFA "coupon" interpretations *de novo* or for abuse of discretion).

# Statutes and Rules

**28 U.S.C. §1711 note.**

…

§2(a) Findings. Congress finds the following: …

(3) Class members often receive little or no benefit from class actions, and are sometimes harmed, such as where—

(A) counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value;

(B) unjustified awards are made to certain plaintiffs at the expense of other class members; and

(C) confusing notices are published that prevent class members from being able to fully understand and effectively exercise their rights.

…

**28 U.S.C. §1712.**

**(a)     Contingent fees in coupon settlements.–** If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

**(b)     Other attorney's fee awards in coupon settlements.–**

**(1)     In general.–** If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.

**(2)     Court approval.–** Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable.

Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees.

**(c)** **Attorney's fee awards calculated on a mixed basis in coupon settlements**.– If a proposed settlement in a class action provides for an award of coupons to class members and also provides equitable relief, including injunctive relief–

    **(1)** that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a); and

    **(2)** that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of coupons shall be calculated in accordance with subsection (b).

…

**(e)** **Judicial scrutiny of coupon settlements.**– In a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members. The court, in its discretion, may also require that a proposed settlement agreement provide for the distribution of a portion of the value of unclaimed coupons to 1 or more charitable or governmental organizations, as agreed to by the parties. The distribution and redemption of any proceeds under this subsection shall not be used to calculate attorneys' fees under this section.

**Federal Rule of Civil Procedure 23. Class Actions.**

…

**(e) Settlement, Voluntary Dismissal, or Compromise.**

The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or

compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

…

(2) Approval of the Proposal. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

…

(C) the relief provided for the class is adequate, taking into account: …

…

(ii) the effectiveness of any proposed method of distributing relief to the class; [and]

(iii) the terms of any proposed award of attorney's fees, including timing of payment;

…

(5) Class-Member Objections.

(A) In General. Any class member may object to the proposal if it requires court approval under this subdivision (e). …

**Statement of the Case**

Plaintiffs filed a class complaint against Massage Envy alleging that the spa chain had increased its patrons' membership fees in violation of members' contractual rights. ER193-94. Before any motion for class certification, the parties proposed a settlement of the putative class action. ER130. Over an objection (ER97) from appellant class-member Kurt Oreshack that the settlement failed to comply with 28 U.S.C. § 1712 and Rule 23(e), the district court approved the settlement and most of class counsel's accompanying fee request. ER4. The district court issued a final judgment, ER1, and Oreshack timely appealed. ER79.

### A. The class complaint and pre-settlement litigation.

Massage Envy is a membership-based massage franchise that charges a monthly fee and offers massages and spa services and products. ER190. The membership provides one pre-paid massage a month, and lower prices than non-members pay for additional services. ER109; Dkt. 121 ¶ 70; ER190. In 2016, plaintiffs filed a putative class action against Massage Envy for collecting millions in allegedly unauthorized and illegal fee increases. Dkt. 1; ER142. The amended complaint alleged breach of contract and state consumer protection law violations. ER189.

Massage Envy's monthly membership affords members only the opportunity to prepay for a set of treatments—the member has no other special access to the facilities or ability to buy products. ER195-96. Plaintiffs claimed that Massage Envy was contractually barred from unilaterally raising their monthly membership fees. ER197. Because Massage Envy requires members to allow automatic charges to their credit

cards, many members did not notice the unilateral price increases for some time. ER197. When they did, the plaintiffs discovered an initial price increase of $0.99, then in some cases, a second, bigger increase of $10 or more. ER198.

## B.    The settlement and fee request.

Before any motion for class certification was filed, the parties reached a proposed settlement. ER130. The settlement class includes current and former members of Massage Envy who paid membership fee increases during the class period. ER133. In exchange for release of all claims against Massage Envy, class members could make claims for vouchers, which expired after eighteen months, for Massage Envy products and services. ER145-47. (Massage Envy offers 251 different items for sale. ER28.) The settlement provided a $10 million floor on claims: if class members did not claim enough vouchers to use the full $10 million, the settlement would increase voucher amounts to claimants *pro rata* to hit the $10 million floor. ER146. Massage Envy would issue class members a new contract providing 45 days advance written notice before membership fee increases. ER147-48. The coupons were transferable, though the settling parties presented no evidence of their value in a secondary market where they could be sold. ER147.

Massage Envy agreed to clear sailing for attorneys' fees: they would not object to the attorneys' fees request so long as class counsel requested no more than $3,300,000. ER169. The settlement had what *Bluetooth* calls a kicker: if the court awards less than $3,300,000, the excess funds would revert to Massage Envy. ER169-70. The

class representatives would have a right to ask for $10,000 incentive awards without opposition. ER170-71.

The district court granted preliminary approval of the Settlement in June 2019. Dkt. 114. Ultimately, 105 thousand class members (about 6% of the class) submitted claims to obtain a settlement voucher. ER90, ER67. Because these claims would have been well under $3 million, the settlement adjusted the vouchers upwards *pro rata* from $10-$50 to $36.28-$180.68. ER90. The $36.28 vouchers can purchase about 150 different items of the 251 Massage Envy has for sale. ER28; Dkt. 135 at 12. Class counsel sought the maximum $3.3 million award that Massage Envy had agreed not to oppose under the settlement. Dkt. 119. The fee request argued that 28 U.S.C. § 1712, which governs attorneys' fees in class-action settlements that provide for a recovery of coupons to a class member, did not apply because the settlement "vouchers" were not coupons covered by the Act. Dkt. 122 at 6.

### C. Oreshack objects.

Class member Kurt Oreshack, through his *pro bono* attorneys at the Center for Class Action Fairness, timely objected to the settlement, class certification, and attorneys' fee request. ER97.

Oreshack objected, among other reasons, that (1) the settlement was a coupon settlement under CAFA but did not follow CAFA's procedures (ER111-15); and (2) when considering the economic reality that many vouchers will expire unredeemed, and all three of the *Bluetooth* warning signs, the settlement unfairly benefits class counsel at the expense of the class (ER115-21). At a minimum, Oreshack objected, CAFA

requires that the court not award attorneys' fees until the coupon redemption rate is known. ER124-26.

Oreshack noted that the district court should investigate the redemption rate of coupons distributed in a previous settlement negotiated between class counsel and Massage Envy's counsel in the Southern District of California in *Hahn v. Massage Envy Franchising, LLC,* No. 12-cv-00153-DMS (BGS) (S.D. Cal.). ER110. Under no circumstances, he asserted, should the district court approve the settlement and award fees based on the $10 million face value of the coupons instead of the expected redemption value. ER104, ER115, ER117, ER119, ER126.

## D. The district court refuses to apply CAFA, refuses to investigate the *Hahn* redemption rate, and approves the settlement and attorneys' fee award.

At the fairness hearing, the district court overruled Oreshack's objections, certified the class, approved the settlement and granted most of class counsel's requested fee award. ER12*ff.* Ultimately the court held that the vouchers were not CAFA coupons because the class members could purchase "quite a bit of variety" without spending their own money and because the coupons were relatively flexible. ER44-45, ER71.

The court held that it did not need to consider the economic reality of the class's relief if it did not apply CAFA: "If it's not a coupon settlement, at least [in] the Ninth Circuit, you look at what the fund is" even when "everybody knows that the fund is not going to be used up." ER24-25. Although the district judge asked Massage Envy's counsel about the redemption rate of the coupons in *Hahn,* ER46, counsel could only

say that it was "into the double digits [of] people actually taking advantage of it" and thought "it was above the teens." ER47-48. Counsel could not say whether "taking advantage of it" meant class members used one voucher or all of the multiple vouchers the settlement issued them. ER47. The Court accepted this answer and did not request any more information. Rather, despite acknowledging that "[s]ome amount [of the coupon value], I guess, will go back [to Massage Envy]," the court still decided to value the coupons at their full $10 million face value for purposes of approving the settlement and awarding attorneys' fees. ER60-61, ER66-69.

The court's consideration of the *Bluetooth* "red flags" was limited to concluding that Oreshack had not "shown" the disproportionality of the fee request, and it was not "prepared to find that there was collusion here." ER60, 67-68. The court did not address Oreshack's contention that the proponents of settlement bear the burden of proving a fair allocation. ER106, ER115, ER119. Nor did the court address Oreshack's objection that *Bluetooth* requires not just a lack of a collusion, but examining more "subtle signs" that suggest that class counsel's self-interests have infected the negotiations. ER115-16. The court recited the Rule 23(e)(2)(C) factors without providing further analysis. ER63-65.

Finally, the court granted in part class counsel's fee request. It did so on a percentage-of-recovery basis by adding together the $10 million face value of the coupon relief with the expected $450,000 in notice and administrative costs, and then awarding 25% of that total ($2,612,500) as the fee award. ER68-70; ER9.

Without making additional independent findings, the court confirmed its settlement approval by ratifying the settling parties' proposed final approval order on

March 2, 2020, and then entered final judgment on March 20. ER4; ER1. By operation of the settlement agreement's "kicker," about $700,000 in unawarded fees reverted to Massage Envy. ER169-70.

On March 26, Oreshack filed this timely appeal. ER79.

## Summary of Argument

The law requires district courts to examine proposed class action settlement agreements in the light of "economic reality." *E.g, Allen v. Bedolla*, 787 F.3d 1218, 1224 & n.4 (9th Cir. 2015); *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1052-55 (9th Cir. 2019). The economic reality is especially important when the settlement compensates class members not with cash, but with coupons that can "'mask[] the relative payment of class counsel as compared to the amount of money actually received by the class members.'" *Roes*, 944 F.3d at 1053 (quoting *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013) (quoting Christopher R. Leslie, *A Market-Based Approach to Coupon Settlement in Antitrust and Consumer Class Action Litigation*, 49 UCLA L. REV. 991, 1049 (2002))). Yet even though the attorneys for the settling parties and the district court acknowledged that the redemption rates of the settlement vouchers would lower than 100% (ER47-48; ER60-61), the district court appraised the settlement at its full $10 million face value. ER66, 67-69. After deciding that CAFA did not apply to the voucher settlement, the district court simply "look[ed] at what the fund is." ER24, ER71. This was reversible error: Even where CAFA does not apply, the district court must still reject a settlement in which the fees are disproportionate to the class benefit. *Roes*, 944 F.3d at 1054. Rather than asking whether *Oreshack* had "shown"

disproportionality (ER67), the court should have demanded that the *settling parties* demonstrate that they had fairly allocated the settlement proceeds. *Koby v. ARS Nat'l Servs.*, 846 F.3d 1071, 1079 (9th Cir. 2017). The court impermissibly allowed the settling parties to withhold information about the likely redemption rate of the vouchers.

The district court also erred as a matter of law in holding that the settlement's $36-$180 "vouchers" for massage services and spa-related products, which expired in eighteen months, and were worthless for class members who had accrued unused massages with their monthly membership fees, were not coupons subject to 28 U.S.C. § 1712. This is exactly what this Court warned against when it created a "limited" exception to § 1712 for Walmart gift cards. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 952 (9th Cir. 2015). As in *EasySaver*, the defendant Massage Envy is "decidedly not [a] giant retailer in the mold of Walmart or other similar stores and class members can only use the [vouchers] to purchase items from a limited universe of products." 906 F.3d at 757 (cleaned up). As in *EasySaver*, an obtainable range of 150-250 products is in a "different realm than the enormous number of products that Walmart sells for under $12." *Id.* at 757 n.8. Just as in *EasySaver*, the vouchers here are "far less flexible than those available in *In re Online DVD*." *Id.* at 757. They lack the advantages of gift cards and have the drawback of an expiration date. Just as in *EasySaver*, class members could not opt for cash instead of the coupon. *Id.* at 758. Nearly sixty percent of class members had terminated their Massage Envy memberships by the time of settlement. ER87. Even more so for these class members, the settlement vouchers could not possibly fit within *Online DVD*'s narrow exception to CAFA for cash-equivalent scrip. Because the vouchers constitute CAFA coupons, the district court erred in awarding attorneys' fees

before learning the coupons' redemption rate. *EasySaver*, 906 F.3d at 758. While the Court can reverse under the *Online DVD* test, this case shows that district courts have trouble applying it in practice when settling parties try to evade CAFA, and the Court should consider *en banc* review to overturn it in favor of plain-language application of the statute.

Finally, the district court overlooked the three indications of a lawyer-driven settlement pinpointed by this Court in *Bluetooth*. 654 F.3d at 947-49; *accord Allen*, 787 F.3d at 1224; *Roes*, 944 F.3d at 1049. Although this Court has warned of the "risk that self-interest, even if not purposeful collusion," will infect a settlement, the district court only looked for "collusion" and ignored conflict of interest. *Compare Roes*, 944 F.3d at 1060, *with* ER60, 67-68. Nor did the district court apply the heightened scrutiny due a pre-certification settlement. *Contra, e.g., Roes*, 944 F.3d at 1049 (reversing settlement approval where the district court had failed to "cite or otherwise acknowledge our longstanding precedent requiring a heightened fairness inquiry prior to class certification"). Instead, the district court showed no concern that nearly $700,000 that Massage Envy was willing to part with in exchange for the class release would, for "no apparent reason," revert to Massage Envy after the court's fee reduction. *Compare* ER25, ER60-61, ER67-68 *with, e.g., Roes*, 944 F.3d at 1058-60 (discussing disfavored reversionary clauses). The district court committed multiple reversible errors of law, and this Court should vacate the settlement approval and remand for consideration under § 1712 and Ninth Circuit law.

## Preliminary Statement and Introduction

Attorneys with the Center for Class Action Fairness ("CCAF"), which became part of the non-profit Hamilton Lincoln Law Institute in 2019, bring Objector Oreshack's objection and appeal. CCAF's mission is to litigate on behalf of class members against unfair class-action procedures and settlements, and it has won more than $200 million for class members. Dkt. 124-2; Andrea Estes, *Critics hit law firms' bills after class- action lawsuits*, BOSTON GLOBE (Dec. 17, 2016) ($100 million at time); *see also, e.g.*, Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12 (calling CCAF attorney Frank "the leading critic of abusive class action settlements"); Editorial Board, *The Anthem Class-Action Con*, WALL ST. J. (Feb. 18, 2018) (praising CCAF's work); *Pearson*, 772 F.3d at 787 (same). For example, this Court recently ruled in favor of CCAF's client, an objector who protested a settlement on Rule 23(a)(4) grounds. *In re Lithium Ion Batteries Antitrust Litig.*, 777 Fed. Appx. 221 (9th Cir. 2019). On remand, an amended allocation plan provided the previously disfavored subclass an additional $10 million of the settlement fund. Oreshack brings this appeal in good faith to protect class members in this and future class actions against unfair and abusive settlements.

**Argument**

**II.    The district court erred as a matter of law in valuing the settlement relief at the vouchers' face value instead of their economic reality, and approved an impermissibly disproportionate settlement.**

**A.    An unfair allocation between the class and class counsel violates Rule 23 because courts have a duty to protect the absent class members from the inherent agency problems in the settlement process.**

The district court improperly approved a settlement agreement that favored class counsel at the expense of the absent class members. Under Rule 23, the courts have a duty to protect the absent class members from this precise scenario. *E.g., Roes*, 944 F.3d at 1049, 1054-55, 1060. The court has a greater duty to scrutinize a settlement in a class action than in ordinary bilateral litigation because "class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of the unnamed class members who by definition are not present during the negotiations." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013) ("*Pampers*"). To combat the omnipresent "danger that the parties and counsel will bargain away the interests of the unnamed class members in order to maximize their own," the district court must act as a fiduciary of the class and apply zealous scrutiny to the proposed settlement. *Id.; Allen*, 787 F.3d at 1223.

The court has this special role in class actions because class counsel will bargain effectively with defendants to reach the efficient settlement amount, but "a defendant is interested only in disposing of the total claim asserted against it," "and the allocation between the class payment and the attorneys' fees is of little or no interest to the

defense." *Bluetooth*, 654 F.3d at 943, 949 (cleaned up). The conflict arises in the allocation between class counsel and the class—counsel may bargain away the interests of the class in exchange for a larger unopposed fee agreement, and only the courts can ensure that class counsel has not compromised the class's recovery. *See id.* at 949; *see also Roes*, 944 F.3d at 1054-55.

An unfair result does not require collusion, merely class counsel and the defendant acting in their own self-interest at the expense of the absent class members in breach of class attorneys' fiduciary duty to their clients. Thus, a court must not look only for collusion, but also "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of class members to infect the negotiations." *Bluetooth*, 654 F.3d at 947.

If the court fails to protect the rights of the unnamed class members, then a dysfunctional allocation can result where class counsel reaps a disproportionately high reward relative to the class recovery. These dysfunctional allocations detract from the effectiveness of class actions as a whole because the class action mechanism depends on unconflicted counsel's zealous advocacy for *all* their clients, especially the absent class members who did not choose their counsel and may not even know their rights. *Cf. Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1167 (9th Cir. 2013). "Public confidence in the fairness of attorney compensation in class actions is vital to the proper enforcement of substantive law." *Laffitte v. Robert Half Int'l Inc.*, 376 P.3d 672, 692 (Cal. 2016) (Liu, J., concurring).

Appellate precedent has repeatedly emphasized the central importance of the trial court in protecting the rights of absent class members. A district court must act as

a "fiduciary for the class . . . with 'a jealous regard'" for the rights and interests of the absent class members. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994)). It "must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Inkjet*, 716 F.3d at 1178 (internal quotation omitted). It must not "assume the passive role" appropriate for an unopposed motion in ordinary litigation. *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). It must not accord the proposed settlement any presumption of fairness. *Roes*, 944 F.3d at 1049. It must comprehensively explore all factors and "give a reasoned response to all non-frivolous objections." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation omitted). It must hold the settling parties to their burden of proving class benefit. *Koby*, 846 F.3d at 1079. It must "think twice, investigate further, and justify" any terms that reflect class counsel's self-interests. *Roes*, 944 F.3d at 1060. And where, as here, class counsel has ultimately favored themselves over their clients, a district court has an obligation to reject the proposed settlement. *Bluetooth*, 654 F.3d at 948-49; *see also Pampers*, 724 F.3d at 721; *Pearson*, 772 F.3d at 786-87.

## B. Courts must reject settlements with illusory relief that obscures the true unfair *allocation* of the class relief.

To protect the absent class members from class counsel's conflict of interest, the district court should have scrutinized the settlement for illusory relief that artificially inflates its value. A court must "examine[] [the settlement value] with great care to eliminate the possibility that it serves only the 'self-interests' of the attorneys and the

parties, and not the class, by assigning a dollar number to the fund that is fictitious." *Dennis*, 697 F.3d 868. The court must look past the face value of the settlement to determine the "economic reality." *Allen*, 787 F.3d at 1224.

Class counsel and defendants both have incentives to artificially inflate the settlement's apparent value. For class counsel, a larger settlement value makes their fee appear to be a smaller percentage of the total. *Roes*, 944 F.3d at 1053. For defendants, the judge is more likely to approve a settlement in which the defendant appears to pay more. "The more valuable the settlement appears to the judge, the more likely the judge will approve it. And the bigger the settlement, the bigger the fee for class counsel." *See* Howard M. Erichson, *How to Exaggerate the Size of Your Class Action Settlement*, DAILY JOURNAL (Nov. 8, 2017).[1] Without judicial oversight to weed out such practices, class counsel will get paid—in economic reality—far more than the 25% benchmark set by this Court while class members will recover little by comparison. *See* Howard Erichson, *Aggregation as Disempowerment*, 92 NOTRE DAME L. REV. 859 (2016).

This case exhibits exactly that problem of economic reality. The economic reality of the settlement is that the lawyers are getting paid $2.6 million, and the class is getting vouchers likely worth less than $1 million. This Court's precedents would foreclose a settlement that stated these realities explicitly. *See, e.g.*, *Dennis*, 697 F.3d at 868 (class counsel receiving even 38.9% of settlement benefit is "clearly excessive"); *Allen*, 787 F.3d at 1224 n.4 (fee award three times greater than class recovery is disproportionate); *Bluetooth*, 654 F.3d at 947-49 (disproportionate fee award is a hallmark of an unfair

---

[1]    *Available    at*    https://www.dailyjournal.com/articles/344700-how-to-exaggerate-the-size-of-your-class-action-settlement.

settlement). Thus, the settling parties obfuscate this reality by distributing coupons that create the illusion of relief and hide disproportionate recovery by attorneys. *See Roes*, 944 F.3d at 1053; Erin L. Sheley & Theodore H. Frank, *Prospective Injunctive Relief and Class Settlements*, 39 HARV. J. L. & PUB. POL. 769, 777-78 (2016).[2] The high face value assigned to the coupons artificially inflates the overall apparent "value" of the package the parties present to the judge. Much like *Roes*, the coupons (1) expire; (2) will revert to Massage Envy after that period; (3) cost the non-members twice as much as the members (ER109); (4) fail to disgorge ill-gotten gains because, as Massage Envy's counsel represented at the fairness hearing, Massage Envy anticipates non-members using settlement coupons on promotional introductory offers (ER55); and (5) do not provide class members any cash option as an alternative, which compares unfavorably to *Roes*, 944 F.3d at 1040-41.

"[T]he danger of unjustifiably inflating the settlement value of coupons is even more grave when the value of unused coupons will revert back to defendants." *Roes*, 944 F.3d 1053. "Unchecked, such reversions would allow defendants to create a larger coupon pool than they know will be claimed or used, just to inflate the value of the settlement and the resulting attorneys' fees, because they know that they will not be on the hook for the full coupon pool." *Id.* at 1054. Yet this issue did not detain the district court long. In fact, it may not even have considered unused coupons to be a true

---

[2] The settlement also includes putative "injunctive relief" that, as Oreshack explained below (ER121-24) is a benefit to Massage Envy rather than the class. But because the court below did not credit any value of that "relief" as part of the total settlement value, Oreshack does not brief that issue here.

reversion: "there's something of a reversion, you could say, sort of a reversion if the vouchers expire." ER68. It declared that it is "not unusual" that "some amount" "will go back." ER60. That was not enough; "it was required to explain why the reversionary component of a settlement negotiated before certification is consistent with proper dealing by class counsel and defendants." *Roes*, 944 at 1059 (cleaned up).

Despite the unmistakable similarities with *Roes*, the district court focused on whether the vouchers in this settlement were coupons: "If it's not a coupon settlement, at least under the Ninth Circuit, you look at what the fund is. Even though if there are going to be claims, a lot of times everybody knows that the fund is not going to be used up." ER24-25. The court committed reversible error because this is the exact opposite of Ninth Circuit law: a court must look at what the class actually receives. *E.g.*, *Roes*, 944 F.3d at 1058-59; *Allen*, 787 F.3d at 1224. Otherwise, it would render Rule 23(e)(2)(C)(ii) a nullity if a court considers a courier hand-delivering a $20 bill to each and every class member identical in value to a claims process requiring a class member to fill out a multiple-page form before being mailed a $20 voucher.

> When the parties to a class action expect that the reasonableness of the attorneys' fees allowed to class counsel will be judged against the potential rather than actual or at least reasonably foreseeable benefits to the class, class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims.

*Pearson*, 772 F.3d at 783. Accepting these fictions, the court did nothing further to investigate the economic reality of the coupon value. As *Roes*, *Allen*, *Koby*, and *Bluetooth*, emphasize, however, "cases are better decided on reality than on fiction." *Pampers*, 724

F.3d at 721 (cleaned up). "Regardless of whether the…vouchers are officially 'coupons' within the meaning of the Class Action Fairness Act, the district court should have recognized that some of the same concerns applicable to coupon settlements also apply here and warranted closer scrutiny of the [face value]." *Roes*, 944 F.3d at 1052.[3]

Oreshack's objection advised the court to begin a realistic appraisal by looking to redemptions rates of analogous relief in other settlements that suggested that the redemption rate might be in the single digits.[4] Though the settling parties asserted that these cases involved vouchers that were automatically distributed rather than claimed, that was not true. For example, in *Davis*, class members would receive a 30%-off coupon, but could affirmatively opt for a $20 coupon. Only seven out of 63 class members—eleven percent—who validly elected to receive a $20-off coupon to Cole Haan clothing stores redeemed those coupons. *Davis*, 2015 WL 7015328, at *4 (N.D. Cal. Nov. 12, 2015). In any event, the settling parties did not provide a better metric by

---

[3] Moreover, the lower court's refusal to apply CAFA to this settlement was also reversible legal error. *See* Section II below.

[4] ER118 (citing, *e.g.*, *Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969, 971 (8th Cir. 2016) (0.045% of distributed certificates redeemed); Declaration of David Tjen, *Knapp v. Art.com*, No. 3:16-cv-00768-WHO, Dkt. 84-7 (N.D. Cal. Aug. 29, 2018) (class members redeemed $142,940 worth of vouchers with $20,000,000 face value); *Davis v. Cole Haan, Inc.*, No. 11-cv-01826-JSW, 2015 WL 7015328 (N.D. Cal. Nov. 12, 2015) (2.3% of total distributed vouchers redeemed); James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443, 1445, 1448 (2005) (typically "redemption[] rates are tiny," "mirror[ing] the annual corporate issued promotional coupon redemption rates of 1-3%"); Steven B. Hantler & Robert E. Norton, *Coupon Settlements: The Emperor's Clothes of Class Actions*, 18 GEO. J. LEGAL ETHICS 1343, 1347 (2005) (noting one settlement where only 2 of more than 96,000 coupons were redeemed).

which to estimate a future redemption rate in this case, though they had the burden of proving settlement fairness.

Moreover, the settling parties here had unusually probative redemption rate data from their settlement in *Hahn v. Massage Envy Franchising, LLC*, a case that had settled by allowing former Massage Envy members to recoup 75% of their billed-for, but unused, massages through vouchers with an expiration date. ER110, 118-19; *see* No. 12-cv-00153-DMS (BGS), Dkt. 396 (S.D. Cal. Jul. 5, 2016). Like the 6.2% claims rate here, 4.6% of the *Hahn* class submitted claims to reclaim their unused massages, a response that the district court characterized as "fairly anemic." *Hahn*, 2016 WL 11620608, 2016 U.S. Dist. LEXIS 196046, at *39 (S.D. Cal. Mar. 30, 2016).[5]

Rather than provide the *Hahn* redemption rate data, both settling parties elected to argue that *Hahn*'s redemption rate is inapposite. ER39; Dkt. 136 at 16 n.11. Neither party provided an alternative benchmark. Although, the district court did inquire into the *Hahn* redemption rate at the fairness hearing, ER46, Massage Envy's counsel failed to provide a definitive answer, guessing that the redemption rate of the coupons was "into the double digits [of] people actually taking advantage of it." ER47. Plaintiffs' counsel agreed: "Unfortunately, I know about the same thing; that the redemption rate was not in the single digits but was in the double digits. I think it was above the teens. But we didn't really ultimately get a final number." ER48. Yet, inexplicably, the district court did nothing with this glimpse into the economic reality of the settlement or the

---

[5] *Hahn* also held that the settlement class needed to be divided into subclasses with separate counsel for current and former Massage Envy members. 2016 U.S. Dist. LEXIS 196046, at *22. Oreshack lodged a comparable objection below. ER106-10.

settling parties' failure to carry their burden. Indeed, as Oreshack argued below, the court should have drawn the adverse inference from the refusal of the settling parties to disclose the *Hahn* redemption rate that Oreshack had requested in his objection. ER16; ER110. If the *Hahn* redemption rate were high, the parties would have trumpeted that fact to the court.

Instead, contrary to *Allen* and *Roes,* the court used the coupons' $10 million face value for purposes of approving the settlement and awarding attorneys' fees. ER60-61, ER66-69. It did not even follow the N.D. Cal. Procedural Guidance for Class Action Settlements,[6] which requires that

> Lead class counsel should provide the following information for at least one of their past comparable class settlements (*i.e.* settlements involving the same or similar clients, claims, and/or issues)… where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members …

Instead, contrary to *Koby*, the district court presumed fairness and held that no one had "shown" that the fee was disproportionate to the class relief. ER67. Combined with refusing to investigate the *Hahn* redemption rate or inferring a low rate when none was produced, the court failed to put the burden to show fairness where it belonged—on the settling parties.

Nor did the district court respond to Oreshack's other claims about the economic reality. For example, the district court failed to address the fact that the claims

---

[6] *Available at* http://cand.uscourts.gov/ClassActionSettlementGuidance.

rate for former member class members was just over half that of the claims rate of current class members. ER91. Former members with no Massage Envy location nearby could only use the coupon while traveling or sell it—but the settling parties presented no evidence of a market price. In addition to the common-sense reality that former Massage Envy members are less likely to do further business with Massage Envy, Oreshack observed that Massage Envy's pricing charges non-members much more than members, so "the settlement vouchers only go half as far for such services." ER109. When Massage Envy's counsel noted (ER55) that former members could use coupons for services at introductory prices, the district court did not press for specifics. Current members, like Oreshack for example, had "already stockpiled numerous fifty-minute massages," so they would be less likely to redeem coupons. ER119 n.14; ER61 (dismissing another objector who raised a similar issue about a surplus of accrued massages). Yet the court did not press Massage Envy for data about current members' use of massages. *Roes* requires more attention and investigation into these issues because undue discrepancies between the treatment of former and current members "would present its own problems for fairness." *Roes*, 944 F.3d at 1052 n.15.

Ultimately, even assuming a robust 10% redemption rate, the economic reality is that class counsel negotiated $3.3 million for its fee fund, and only $1 million for its clients. Indeed, if plaintiff's counsel is correct that the participation rate of coupon holders is ultimately 20%, then only 21,138 persons from a total class of 1,705,504 will obtain any benefit at all, with the other 98.8% of the class receiving no compensatory relief at all. And even if the ultimate redemption rate is 20%—a more generous estimate than any known coupon redemption rate would support, then the class would only

obtain $2 million in concrete value while counsel gets $3.3 million for themselves. Counsel would get more than 60% of the constructive common fund's value. Even with the court's reduction in fees (which reverted to Massage Envy, rather than the class), the attorneys would come out ahead. The district court erred as a matter of law and abused its discretion in approving a settlement agreement that, when considered in the light of "economic reality," failed to protect the interests of the absent class members. Rule 23(e) does not permit such "convincing indications that self-interest rather than the class's interests in fact influenced the outcome of the negotiations." *Roes*, 944 F.3d at 1050 (internal quotation omitted).

\* \* \*

The district court failed to consider the economic reality of the settlement. Had it done so, the disproportionality of the attorneys' fees relative to the class recovery would have been obvious. Relying on a fictitious settlement value to approve the settlement is reversible error, and this Court should reverse and remand for further proceedings on this basis alone.

**III.  The district court's error in valuing the coupons in this settlement led to reversible error of approving the settlement and attorney award.**

**A.  The lower court should have applied CAFA.**

**1.  The "vouchers" expire in eighteen months and can only be used for Massage Envy's limited inventory of spa-related services and 251 products. They do not fit within *Online DVD*'s narrow exception to CAFA for nonpecuniary relief that is "equivalently useful" to cash.**

The district court erred in refusing to treat the settlement vouchers as "coupons" under CAFA. CAFA requires heightened judicial scrutiny to a coupon settlement and to base the attorneys' fee award "on the value to class members of the coupons that are redeemed," 28 U.S.C. § 1712(a); *Inkjet*, 716 F.3d at 1181-86; *Easysaver,* 906 F.3d at 755 ("heightened scrutiny"). "[W]here [coupon] settlements are used, the fairness of the settlement should be seriously questioned by the reviewing court where the attorneys' fee demand is disproportionate to the level of tangible, non-speculative benefit to the class members." S. Rep. 109-14, at 31 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 32. "Indeed, if the legislative history of CAFA clarifies one thing, it is this: the attorneys' fees provisions of § 1712 are intended to put an end to the 'inequities' that arise when class counsel receive attorneys' fees that are grossly disproportionate to the actual value of the coupon relief obtained for the class." *Inkjet*, 716 F.3d at 1179. Failure to apply CAFA's heightened scrutiny to review coupon settlement valuation is reversible error.

CAFA's heightened scrutiny matters because coupon settlements pose several particular dangers that lead to disproportionate attorneys' fee awards at the expense of the class. First, they "mask[] the relative payment of class counsel as compared to the

amount of money actually received by the class members." *Inkjet*, 716 F.3d at 1179 (quoting Leslie, 49 UCLA L. Rᴇᴠ. at 1049). Moreover, "they often do not provide meaningful compensation to class members; they often fail to disgorge ill-gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010) (cleaned up). Finally, coupons "serve as a form of advertising for the defendants, and their effect can be offset (in whole or in part) by raising prices during the period before the coupons expire." *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001).

To be clear, "heightened scrutiny" does not mean that a court must reject all coupon settlements. "Heightened scrutiny" simply means that the court should value the settlement according to the estimated redemption value of the coupons rather than their face value. *Cf. also* 28 U.S.C. § 1712(d) (authorizing courts to receive expert testimony on redemption rates). So a good coupon with a high redemption rate can still justify settlement approval, and ultimately after that redemption period, a sizable attorneys' fee award — but the proof is in the actual behavior of the class members, not the hypothetical value assigned by the lawyers, or worse, a 100% redemption rate assumed by a court. *See Inkjet*, 716 F.3d at 1199 (noting that § 1712 requires the calculation of "a percentage-of-recovery fee be based on redeemed coupons, not on hypothetically available coupons").

As in *Redman*, the settlement agreement here characterizes the relief as "vouchers" to avoid the heightened scrutiny § 1712 requires. *Compare* ER145-49 *with* 768 F.3d at 635 ("'Voucher' is indeed the term used in the settlement agreement,

because the parties didn't want to subject themselves to the coupon provisions of the Class Action Fairness Act."). But calling a coupon a voucher does not evade its legal categorization as a coupon: The legal effect "is a question of function, not just labeling." *Khatib v. County of Orange*, 639 F.3d 898, 905 (9th Cir. 2011). And courts have repeatedly rejected attempts to evade "coupon" categorization by calling a coupon by another name.[7] Courts must "ferret[] out the deceitful coupon settlement that merely co-opts the term 'gift card' to avoid CAFA's requirements." *Online DVD*, 779 F.3d at 952.

While Congress did not define the term "coupon" anywhere in CAFA, "[w]here a statute does not define a key term, [courts] look to the word's ordinary meaning." *Inkjet,* 716 F.3d at 1181. The vouchers here are coupons according to the dictionary definition. A coupon is "[a] code or detachable part of a ticket, card, or advertisement that entitles the holder to a certain benefit, such as a cash refund or a gift." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed., Houghton Mifflin Harcourt Publishing Company 2017). "Coupon" is also "defined as a certificate or form 'to obtain a discount on merchandise or services,'" and "'a form surrendered in order to obtain an article, services, or accommodation.' Coupons are commonly given for merchandise for which no cash payment is expected in exchange." *Dardarian v. OfficeMax N. Am., Inc.,* No. 11-cv-00947, 2013 U.S. Dist. LEXIS 98653, at \*6-\*7 (N.D.

---

[7] *E.g. Inkjet*, 716 F.3d at 1176 ("e-credits" are a "euphemism" for coupons); *Easysaver*, 906 F.3d at 752 ("credits"); *Seegert v. Lamps Plus, Inc.*, 377 F. Supp. 3d 1127 (S.D. Cal. 2018) ("vouchers"); *Knapp v. Art.com*, 283 F. Supp. 3d 823 (N.D. Cal. 2017) ("vouchers").

Cal. July 12, 2013) (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1988)).

Contemporary usage supports this conclusion. A query on the Google web search engine for the phrase "Coupon for a free" returns about 6,100,000 hits (searched July 9, 2020). Publications such as the *New York Times* use the word "coupon" to describe vouchers for free products. *E.g.*, Scott Cacciola, *West Looms as Knicks Keep Going South*, N.Y. TIMES (Nov. 23, 2013) ("everyone in attendance received a coupon for a free chicken sandwich as part of a fan promotion"). The legislative history on CAFA expressly includes examples such as vouchers for a free crib repair kit, free spring water, or free golf balls as examples of "coupons." S. Rep. 109-14 at 16-20; *cf. Inkjet*, 716 F.3d at 1179 (relying on this legislative history). The ordinary meaning of "coupon" includes vouchers that one can exchange for merchandise or services, even without paying additional sums to the vendor.

In addition to the plain language of § 1712, these vouchers are CAFA coupons under *Online DVD*. But the district court let the *Online DVD* exception swallow the rule. ER71. *Online DVD* carved out a "limited" exception to the broad dictionary definition of coupon for a Walmart gift card. *See* 779 F.3d at 952. In explaining why a Walmart gift card differed from an ordinary coupon, the Court noted several factors, all of which must be met: They "can be used for any products on walmart.com, are freely transferable . . . and do not expire, and do not require consumers to spend their own money." 779 F.3d at 951. For example, being a coupon for a free product was not by itself enough to avoid CAFA. *Id.* at 951-52 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006)). In particular, *Online DVD* emphasized

its narrowness: it was ruling only on "gift cards[, which] are a fundamentally distinct concept in American life from coupons." 779 F.3d at 952. *Online DVD*'s holding was that the Walmart gift card was a cash-equivalent "without making a broader pronouncement about every type of gift card that might appear." *Id.* And importantly, class members in *Online DVD* could elect to receive cash instead of a gift card, arguably showing that *Online DVD* class members receiving coupons valued them as much as cash. *EasySaver,* 906 F.3d at 758.

By contrast, in *EasySaver*, this Court rejected an attempt to evade CAFA where the defendant issued "credits," finding that the "credits" in the settlement were still coupons subject to CAFA's heightened scrutiny. *EasySaver*, 906 F.3d at 756-57. *EasySaver* distinguished the "credits" from the gift cards in *Online DVD*, noting that the "credits" were only good on a "limited universe of products" sold by the defendant; the "credits" expired in a year; and the "credits" were at most sufficient to purchase items from an array of fifteen to twenty-five products sold by the defendant without spending more money. *Id.* at 757. Although the "credits" were transferable, that fact did not exempt them from CAFA. *Id.*

The dispositive factor in interpreting *Online DVD* and *EasySaver* is whether the vouchers are like cash. And the key factor in that analysis is the variety of items and services for which a class member may use the voucher. In *Knapp v. Art.com,* $10 settlement vouchers to Art.com could purchase about 100,000 whole products, yet the court rejected the idea that they were equivalent to *Online DVD*'s gift cards: "Unlike a Walmart gift card where recipients could purchase necessities such as toilet paper or toothpaste, class members here will be forced to purchase a product that they otherwise

may not have purchased." 283 F. Supp. 3d 823, 837 (N.D. Cal. 2017). *Seegert v. Lamps Plus, Inc.* determined that Lamps Plus vouchers, which were good for 5,800 whole products, were "not everyday products required for purchase," thus, not cash equivalents and coupons subject to CAFA. 377 F. Supp. 3d 1127, 1132 (S.D. Cal. 2018). And *Online DVD* itself noted that coupons for "Hewlett-Packard 'printers and printer supplies'" did not fit within its exception fitting "the ability to purchase one of many different types of products." 779 F.3d at 952 (quoting *Inkjet*, 716 F.3d at 1176). Most recently, in *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, the Fourth Circuit applied *EasySaver*'s test in dicta and determined that Lumber Liquidators vouchers with an average face value of $703 constitute CAFA coupons even though Lumber Liquidators offers hundreds of flooring-related products. 952 F.3d 471, 490-91 (4th Cir. 2020) ("*Lumber Liquidators*").

Here, Massage Envy offers only 251 spa-related items, of which class members can obtain only about 150 without additional expenditure. ER28; Dkt. 135 at 12. Although 150 is more than the 15-25 whole products available in *EasySaver*, it remains in a "different realm than the enormous number of products that Walmart sells for under $12." 906 F.3d at 757 n.8. A discount on Massage Envy products does not come close to the exception in *Online DVD* for the fungible Walmart gift card. What "separates a Walmart gift card from a coupon is not merely the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many different types of products." *Online DVD*, 779 F.3d at 952; *see also Lumber Liquidators*, 952 F.3d at 490; *Knapp*, 283 F. Supp. 3d at 837; *Seegert*, 377 F. Supp. 3d at 1132.

The Massage Envy settlement vouchers have little in common with *Online DVD*'s gift cards. They are freely transferable and do not require class members to accept more of an allegedly defective or subpar service. But *EasySaver* holds that these factors are not dispositive. 906 F.3d at 756-57 (transferable coupons still subject to CAFA regardless of "how closely the relief matche[s] class members' alleged injury" or "the substance of the underlying claim of injury"). There, the similarities end.

Class members here can only use the voucher on Massage Envy products, unlike *Online DVD*, where the class members had the option to elect a cash award and avoid doing business with the defendant to get their recovery. *See id.* at 941, 952. And, unlike in *Online DVD*, the vouchers expire after eighteen months. Gift cards, which do not expire, are a "fundamentally distinct concept in American life from coupons," and operate essentially as cash when they can be used to wide array of every-day products. *Id.* at 952. Thus, the Massage Envy vouchers fail multiple *Online DVD* factors—and do not fit the *Online DVD* exception, regardless of their degree of or lack of resemblance to the credits in *EasySaver*.

Simply put, *Online DVD* and *EasySaver* do not create a spectrum where anything better than an *EasySaver* coupon might potentially qualify for the *Online DVD* exception, as the district court seemed to believe. ER16 ("Needless to say, this case doesn't fall at one extreme or the other in terms of whether it's a coupon or not."). The *Online DVD* exception is a "limited" one: if an instrument does not fall within what the district court called its "extreme," CAFA applies. *Online DVD* itself stated that it was not setting out a broad pronouncement, though *Easysaver* turned it into a three-factor test. *Compare* 779 F.3d at 951 *with* 906 F.3d at 757. Still, taken together, *Online DVD* and *EasySaver* hold

that to avoid the heightened scrutiny CAFA requires of a coupon settlement, the award must be a cash equivalent. *E.g.*, *EasySaver*, 906 F.3d at 757 ("the credits still cannot be used in anywhere near the same way as cash"). And the core of being a cash equivalent is not transferability or being able to buy a whole product, it is being able to buy such a wide array of products with a non-expiring instrument that the purchasing power is indistinguishable from cash. If a coupon has an expiration date, or can't be used for hundreds of thousands of products, it is not "equivalently useful" to cash, and thus not within the limited *Online DVD* exception. Here, as in *EasySaver*, "nothing in the record could have given the district court reason to believe that any class member, let alone all class members, would have viewed the [$36 voucher] as equivalently useful to [$36] in cash." 906 F.3d at 958.

Yes, a coupon might have attributes that suggest class members might be more likely to use it than an *EasySaver* coupon. But that just means it will have a higher redemption rate, and class counsel will be fairly compensated for the true value of the coupon, albeit over the course of the life of the coupon. *Accord EasySaver*, 906 F.3d at 756 n.6. (Section 1712 does not *bar* coupon settlements; it just sets rules for valuing them.) When the court substitutes its own subjective judgment for § 1712's requirement to use an objective, empirical measure—the redemption rate—it commits reversible error.

Here, the Massage Envy vouchers simply do not meet either the *Online DVD* standard or *EasySaver* standard of cash equivalent. Outside the judicially created narrow cash-equivalent exception, there are no exceptions to the statutory language of § 1712. There is no "somewhere-in-between-*EasySaver*-and-*Online DVD*" exception. A coupon

is either a cash equivalent, or it is not. The vouchers in this settlement are coupons, and the district court erred in not treating them as such.

### 2. The settling parties' other stated reasons against applying CAFA are baseless.

In arguing that the Massage Envy vouchers were not coupons, the settling parties made several arguments that have no basis, either in *Online DVD* or elsewhere.

Class counsel claimed it significant that the class members had to request the vouchers. ER48-49. The Ninth Circuit has held that this fact irrelevant. In *Inkjet*, the dissent argued that the settlement distributed e-credits only to class members who filed online request forms, and "many class members had already taken affirmative steps to obtain e-credits." 716 F.3d at 1189 n.4 (Berzon, J., dissenting). But the majority rejected that argument and properly found that the e-credits were coupons. *Id.* at 1176; *accord Lumber Liquidators*, 952 F.3d 471 (finding vouchers to be CAFA coupons even where class members elected to claim them). Indeed, that coupons only go to claimants who request the coupons makes the settlement worse, not better: someone who doesn't want to do business with Massage Envy and makes no claim gets nothing in exchange for her release.

Similarly, the supposedly high rate of requests for vouchers—6.2% (ER67)—means merely that 93.8% of the class will receive nothing, rather than that the vouchers are exempt from § 1712. That some class members actively demonstrate an interest in the coupons does not change the character of the relief as a coupon. It merely means that "to the extent that the settling parties are correct that class members have a strong

interest in receiving these coupons, the coupon redemption rate should reflect that interest." *EasySaver*, 905 F.3d at 756 n.6.

*Online DVD* does not save this argument. The *Online DVD* factors examine how much like cash a voucher is — not how many people have expressed delight with the settlement agreement. *Online DVD* looked at the array of products available to spend the voucher on, whether it expired, whether it was freely transferable, whether consumers have to spend more of their own money, and whether consumers have to buy more products from defendant. 779 F.3d at 951-52. To the extent that *Online DVD* even identified class members' expression of interest, it was to note that 63% of claiming class member elected to obtain a gift card instead of the equivalent amount of cash. *Id.* at 940. Such a cash option was not available here. If the settlement offered any cash option, the outcome would have been more along the lines of *Lumber Liquidators*, where "only about 15% of class members selected the vouchers over the cash award." 952 F.3d at 490.

Indeed, we *know* from their actions that class counsel does not think there will be a high redemption rate. Class counsel could admit that the vouchers are subject to CAFA, and wait eighteen months to find out how many are used. Instead, they prefer to wait longer to take their chances that the district court's rulings will stand. (The first notice of appeal in *EasySaver* was filed in March 2013, and it ultimately took over five years and two decisions for the Ninth Circuit to decide that the *EasySaver* coupons— which everyone now cites as a paradigmatic example of CAFA coupons—were subject to CAFA.) This is only rational behavior by class counsel if they expect the redemption rate to be low.

Moreover, class counsel's push to classify the vouchers as anything other than coupons reveals their own belief that the settlement is disproportionate. Were they confident that their fee would be proportional to the class's actual benefit, they would have nothing to fear from an award under the terms of § 1712(a). Although the court suggested (ER50) class counsel would not want to wait until the accounting of their clients' benefit, that's just a further manifestation of self-interest. *Cf.* Rule 23(e)(2)(C)(iii) (instructing courts to consider the timing of any fee payments).

### B. Because CAFA applies, the district court erred as a matter of law in valuing the coupons at face value and assuming a 100% redemption rate.

There is no dispute: under 28 U.S.C. § 1712(a), when calculating attorneys' fees, a court must value a settlement not by the face value of the coupons that the settlement issues, but only those coupons that class members actually redeem. The language of the statute is mandatory: "shall be based." *Inkjet*, 716 F.3d at 1181. The court has no discretion to award—as it did—attorneys' fees to class counsel based on the face value of the coupons instead of the redemption value as the statute requires. *Id.* The addition of injunctive relief (which the district court did not mention) does not change this result. CAFA requires that even in a case with mixed recovery, *e.g.*, with part injunctive relief and part coupon, a court must calculate the attorneys' fees attributable to the coupon settlement still must under 28 U.S.C. § 1712(a), and the award for the injunctive relief

must separately. *See* 28 U.S.C. § 1712(c); *Inkjet*, 716 F.3d at 1184.[8] Under *Inkjet* and *EasySaver*, failing to apply the CAFA statutory formula for calculating attorneys' fees is reversible error.

The district court could have legally approved the settlement had it followed the path Oreshack's counsel suggested at the fairness hearing: "We could agree to put the $3.3 million in escrow, and they could get the interest on it, if they're entitled to the full amount, for the [eighteen] months." ER49-50. The Court has expressly endorsed this plan as a proper means of complying with § 1712(a). *EasySaver*, 906 F.3d at 760 n.13; *Inkjet*, 716 F.3d at 1186 n.19. It's not infeasible: district courts have done it. *E.g. Knapp*, 283 F. Supp. 3d at 838 (deferring consideration of class counsel's fee motion until the coupon redemption period's end); *Rougvie v. Ascend Retail Grp., Inc.*, No. 15-cv-00724, 2016 WL 4111320, at *27 (E.D. Pa. July 29, 2016) (same).

Contrary to both *Inkjet* and *EasySaver,* the district court awarded fees as 25% of the "combination of the [$]10 million [face value of the coupons], plus whatever the administration fees were—they were estimated to be [$]450,000." ER69. Ultimately, that came to a final award of $2,612,500. ER9. Nowhere does the court or class counsel assign a specific monetary value to the injunctive relief—the $10.45 million settlement valuation is entirely the coupons, plus $450,000 of settlement administration costs. *Id.*

Because the vouchers are CAFA coupons, the district court was statutorily required to value the settlement at the redeemed rate before awarding attorneys' fees.

---

[8] Moreover, the injunctive relief could not fairly support the settlement because it provides no benefit to the large percentage of the class who are *former* monthly members of Massage Envy. ER106-10.

*See* 28 U.S.C. § 1712(a). It did not, and thus at a minimum, this Court must remand to "recalculate" the fee award "in a manner that treats the [vouchers] as coupons under CAFA." *EasySaver*, 906 F.3d at 760.

**C.    *Online DVD* is wrong and an *en banc* court should overturn it.**

*Online DVD* requires reversal here, but that so many settling parties try to shoehorn obvious coupons into its limited exception to CAFA—and that so many district courts let them do it, even when the coupons are as risible as those in *EasySaver*—shows that its judicially created exception is unworkable and should be reversed. As this case shows, attorneys use *Online DVD*'s departure from the statutory language to crowbar district courts into impermissible conclusions about coupons that are plainly subject to CAFA. (Two separate district court judges erroneously held that the *EasySaver* coupon was not subject to CAFA! 906 F.3d at 754.) Doing so would reduce the burden on the judiciary and reconcile Ninth Circuit law with the statutory language.

*Online DVD* suggests that when a gift card is essentially a cash equivalent, it is not a "coupon" for purposes of CAFA—though nothing in the statute authorizes that exception. At the fairness hearing, the district judge extensively discussed applying *Online DVD*'s factors to determine that a Massage Envy voucher is not a coupon because it was "more like" a Walmart gift card than an EasySaver coupon. ER26-43. But if the district court's interpretation of *Online DVD* is correct, then the "limited" exception has eviscerated the statute, despite *Online DVD*'s assurances to the contrary.

Cash is entirely fungible: as Homer Simpson's brain once told him, "Money can be exchanged for goods and services." "Boy Scoutz 'n the Hood," *The Simpsons* (Nov. 18, 1993). *Online DVD* concluded that a Walmart gift card was like cash because it could buy so many goods and services without any additional money, without time limit. *Online DVD*, 779 F.3d at 951-52. But many coupons require no additional money to purchase a product. What truly set the *Online DVD* gift cards apart from a voucher for a free mailer that *Synfuel* declared a coupon was the vast array of products for which they could be used. *Id.* *Online DVD* confined its analysis and conclusion to the facts of that case: "We conclude only that the gift cards in this case are not subject to CAFA, without making a broader pronouncement about every type of gift card that might appear." *Id.* at 952.

The *Online DVD* court disagreed that "failing to apply CAFA to these gift cards will 'eviscerate the Class Action Fairness Act,' because settlements will be able to avoid CAFA merely by labeling their coupons as gift cards. *Our holding will have no such effect*." *Id.* (emphasis added). Cases like *EasySaver* and the one at bar have proven the *Online DVD* court wrong, and it is time to correct that history.

The accidental *Online DVD* test has created aberrational results as courts ratchet it in one direction to expand the exception to even further contradict the plain language of CAFA. For example, in the unpublished *Hendricks v. Ference*, this Court held over a forceful dissent that a voucher for a can of tuna was not a coupon under CAFA—a fact pattern all but identical to the *Synfuel* case that *Online DVD* expressly refused to contradict. *Compare* 754 Fed. Appx. 510 (9th Cir. 2018) *with* 779 F.3d at 951-52; *see also* ER45 (relying on *Hendricks* without noting that the *Hendricks* settlement allowed class

members a cash option, so gave tuna vouchers only to class members who preferred Starkist tuna to cash). Unlike the vast array of products at Walmart, the *Hendricks* voucher was good for only one product—tuna. "That class members could buy canned tuna now or could buy canned tuna five years from now simply does not make these vouchers less like coupons, in the common understanding of that term." *Id.* at 513 (Friedland, J., dissenting). Moreover, the likelihood that the coupon will be redeemed depends on what it can purchase: "what the coupon can be used to purchase is more significant than whether the coupon can be transferred or at some point expires— indeed, the value any class member could obtain by transferring a voucher is limited by the extent to which others would want it, which is determined by what it can be used for." *Id.* at 514 (Friedland, J., dissenting).

Judge Friedland's dissent concluded that vouchers should always be coupons under CAFA, noting that "Congress intended the definition to be simple—any type of award that is not cash or a product itself, but that class members can redeem to obtain products or services or to help make future purchases." *Hendricks*, 754 Fed. Appx. at 514. Congress "did not purport to limit the definition of 'coupon' to . . . percentage discounts rather than other sorts of gift cards or vouchers. . . . '[F]rom the standpoint of the dominant concerns that animate the provisions of [CAFA] regarding coupon settlements it's a matter of indifference whether the coupon is a discount off the full price of an item or is equal to (or for that matter more than) the item's full price.'" *Id.* at 514 n.1 (Friedland, J., dissenting) (quoting *Redman*, 768 F.3d at 636).

Because courts are treating *Online DVD* as a balancing test rather than as a *sui generis* exception, "endless litigation over such questions is inevitable unless we change

course and adopt a simpler rule." *Hendricks*, 754 Fed. Appx. at 515 (Friedland, J., dissenting). Treating more entire categories of non-cash awards as coupons under CAFA rather than parsing them under the accidental *Online DVD* test would end the dysfunctional settlement allocations in entire categories of cases. Parties could structure settlements knowing in advance whether they would be coupons or not. *Id.*

*Online DVD* is also problematic in that it anticipates fact-intensive analysis of coupons to determine whether a coupon is a coupon instead of simply applying a bright-line dictionary definition, but courts such as the one here do not permit discovery or engage in the scrutiny to distinguish a fungible cash-like gift-card from the coupons here.

As one panel cannot overrule another, Oreshack preserves the issue for further review later. Fortunately, *Online DVD* can be limited to its unique facts, applicable to a handful of potential defendants with broad diverse retail operations at most, and does not remotely require affirmance of the refusal to apply CAFA here. But the confusion of the district court below and the degree to which it and other district courts have used *Online DVD* to stray further and further away from the text of CAFA demonstrates that this Court should give clearer guidance that *Online DVD* does not exclude so many coupon settlements from CAFA.

**IV.    Independent of CAFA, the district court committed reversible error in approving a settlement that exhibits preferential treatment to class counsel.**

Under this Circuit's precedents, the settlement's preferential treatment of class counsel is a separate and independent basis for reversal. The 2018 Amendments to

Rule 23 codify the requirement that courts analyze settlement relief in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

The Ninth Circuit has identified three warning signs that an attorneys' fee arrangement may, in violation of Rule 23(e), be preferring the interests of class counsel in getting paid over compensating the class members for their injury: (1) unreasonable disparity between the class award and the attorneys' fee award; (2) a "clear sailing" provision, in which the defendant agrees not to oppose the fee request; and (3) a "kicker," such that any unawarded fees revert to the defendant rather than go into the amount available to satisfy class claims. *Bluetooth*, 654 F.3d at 947; *accord Allen*, 787 F.3d at 1224 (same); *Roes*, 944 F.3d at 1049 (same). All three elements are present here, and class counsel's breach of fiduciary duty in adopting them as part of the settlement identifiably cost the class money, and should require settlement rejection as a matter of law.

Even if the Court is not so willing to hold on this question of first impression, the district court misapplied *Bluetooth* in several ways, requiring reversal for consideration under the proper legal standards.

### A. Because the kicker segregated class counsel's fees from class recovery, deprived the court of the power to reallocate the award between the class and class counsel, and cost the class nearly $700,000, the settlement violates Rule 23(e).

The settlement deprived the district court of the power to reduce disproportionately high attorney's fees and give that money back to the class. The

settlement segregates the attorney's fee award into a fund separate from the fund to provide vouchers to class members, and any reduction of the award in attorney's fees reverts to the defendant (also known as a "kicker"). This structure creates the illusion that the fees are in addition to class relief—but in economic reality, they are simply a compartmentalized package deal that together form a "constructive common fund." *Dennis*, 697 F.3d at 862-63 (evaluating similar "constructive common fund" settlement); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820-21 (3d Cir. 1995); *Johnson v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); MANUAL FOR COMPLEX LITIGATION § 21.71 (4th ed. 2008). As long as the defendant willingly foots both bills, there is no way to avoid the "truism that there is no such thing as a free lunch." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003).

A segregated fee structure, as here, is actually worse than the typical common-fund settlement because the Court cannot augment class recovery by reducing an excessive fee award. *See Pearson*, 772 F.3d at 786 (noting that fee reduction is the "simple and obvious way" to fix an allocation); *Bluetooth*, 654 F.3d at 949. If the Court reduces the fees here, they just return to the defendant.

Here, the district court calculated a fee award that was about $700,000 less than the amount that the parties negotiated. "If the defendant is willing to pay a certain sum, there is no apparent reason the class should not benefit from the excess allotted." *Roes*, 944 F.3d at 1059-60 (quoting with alteration *Bluetooth*, 654 F.3d at 949).

There was not only no apparent reason here, but no reason at all: indeed, the only justification that class counsel gave for the kicker was asserting without citing any appellate precedent that a reverter agreement is acceptable if the fee request is

reasonable. Dkt. 136 at 23. But the district court shaved the fee request from $3.3 million to $2.6 million, showing that it did not think the request reasonable. Even though Massage Envy's clear-sailing agreement showed that it was willing to pay $3.3 million in cash to settle the case, $0.7 million went back into its pockets because of the kicker. It should have gone to the class.

Yet the district court did not even mention the fact that these settlement funds would revert to Massage Envy. It is not even clear that the district court viewed this as a real reversion, let alone reviewed the structure with the necessary suspicion. ER68 ("Well, [class counsel] won't be paid if they're not paid"). But a reversion is the functional structure. Regardless of whether it is "explicitly stated" as a reversion in the settlement, it "renders the Settlement unreasonable." *Rollins v. Dignity Health*, No. 13-cv-01450, 2019 WL 8165915, 2019 U.S. Dist. LEXIS 228566, at *18-*19 (N.D. Cal. Oct. 28, 2019).

*Bluetooth* noted that a reversion fee structure is problematic in the context of a clear-sailing agreement. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." 654 F.3d at 949. In a "kicker" settlement, any fee reduction merely lines the defendant's pockets, reducing the incentive of both courts and potential objectors to challenge the fee request. *Pearson*, 772 F.3d at 786; Charles Silver, *Due Process and the Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809, 1839 (2000) (a 'kicker' is "a strategic effort to insulate a fee award from attack"); Lester Brickman, Lawyer Barons 522-25 (2011) (arguing that the kicker is *per se* unethical).

The failure to acknowledge the problem, much less apply the heightened scrutiny *Bluetooth* requires, 654 F.3d at 946-47, is a failure to apply the correct law and thus reversible error. But this Court should go further and rule that a kicker combined with an excessive fee request that returns money to the defendant is a *per se* reason to reject a settlement. When confronted with a disproportionate settlement and warning signs of a dysfunctional allocation, but no means to reallocate the excessive fee request to the class, the only option a court has to protect the absent class members is to reject the unfair deal. The district court should have done so here, and the Ninth Circuit should so hold.

## B. The district court erred in focusing on collusion, rather than on whether counsel's self-interest has affected the terms of settlement.

Repeatedly, the district court disavowed any suggestion that there could be collusion given the arm's length negotiation. ER60 ("I don't think that I'm prepared to find that there was collusion here"); ER67 (looking for "signs of collusion"); ER68 ("I don't find that there's collusion here"); ER8 ("the SETTLEMENT was negotiated at arm's length"). But as this Court has recognized "many times," collusion is a straw man: "the incentives for the negotiators to pursue their own self-interest and that of certain class members are implicit in the circumstances and can influence the result of the negotiations without any explicit expression or secret cabals." *Roes*, 944 F.3d at 1050 n.13 (quoting *Staton*, 327 F.3d at 960). It is a "risk that self-interest, even if not purposeful collusion will seep its way into the settlement terms." *Id.* at 1060; *accord Bluetooth*, 654 F.3d at 947 (warning against "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the

negotiations."). "[T]he Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *Bluetooth*, 654 F.3d at 948. But the district court did not address Oreshack's objection it is insufficient for a settlement to be free of collusion if there remain signs that class counsel's self-interests have infected the negotiations. ER115-16.

## C. The district court erred in shifting the burden to the objector to prove settlement unfairness.

As discussed in Section I above, district courts must scrutinize the benefits to the class through the lens of "economic reality," not hypothetical amounts made available. *E.g., Allen*, 787 F.3d at 1224 & n.4. The fairness analysis looks to the "ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson,* 772 F.3d at 781 (quoting *Redman*, 768 F.3d at 630). Instead, the lower court decided that it should value the settlement relief at the $10 million face value of the coupon fund. ER66. This mistake directly led to its second error: finding that *Bluetooth*'s warning sign of disproportionality had not been "shown here." ER67. By errantly placing the burden on class objectors to show disproportionality, the district court effectively applied an "erroneous" "presumption of fairness." *Roes*, 944 F.3d at 1049. "It was the parties' burden to prove the fact, rather than [objector's] burden to disprove it." *Pampers*, 724 F.3d at 719.

## D. The "clear sailing" provision requires scrutiny because it can mask a misallocated settlement.

In the settlement, Massage Envy agreed not to challenge class counsel's fees if they did not exceed $3.3 million. ER169. This "clear sailing" provision is one of

*Bluetooth*'s indicators of a dysfunctional settlement. *Bluetooth*, 654 F.3d at 947; *see also Redman*, 768 F.3d at 637. When a settlement agreement has a "clear sailing" provision, the court "has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Bluetooth*, 654 F.3d at 948 (quoting *Staton*, 327 F.3d at 954).

Courts must scrutinize "clear sailing" provisions to forestall conflicts of interest between class counsel and the class. Class counsel may bargain away too much of the class members' recovery to maximize their own payment:

> Because it's in the defendant's interest to contest that [fee] request in order to reduce the overall cost of the settlement, the defendant won't agree to a clear-sailing clause without compensation— namely a reduction in the part of the settlement that goes to the class members, as that is the only reduction class counsel are likely to consider.

*Redman*, 768 F.3d at 637. "Clear sailing" is most dangerous when, as here, a negotiated attorneys' fee is combined with coupons or non-cash relief for the class. *Id.* Yet, the district court applied no heightened scrutiny to the settlement despite the presence of both. It did not "substantively grapple" with the "problematic aspects of the relationship between attorneys' fees and the benefit to the class" as is "particularly important given the clear sailing provision." *Roes*, 944 F.3d at 1051 (cleaned up).

## Conclusion

The settlement is unfair as a matter of law, and the settlement approval should be reversed. In the alternative, the district court committed multiple independent

reversible errors of law under Ninth Circuit precedent and CAFA, and the settlement approval and fee award should be vacated and remanded for further proceedings consistent with the law.

Dated:  August 5, 2020                   Respectfully submitted,

                                         */s/ Theodore H. Frank*
                                         Theodore H. Frank
                                         Adam E. Schulman
                                         HAMILTON LINCOLN LAW INSTITUTE
                                            CENTER FOR CLASS ACTION FAIRNESS
                                         1629 K Street NW, Suite 300
                                         Washington, DC 20006
                                         Telephone:  (703) 203-3848
                                         Email:  ted.frank@hlli.org

                                         *Attorneys for Appellant Kurt Oreshack*

**Statement of Related Cases**
**pursuant to Circuit Rule 28-2.6**

Appellant Oreshack is not aware of any related cases.


Executed on August 5, 2020.                    */s/ Theodore H. Frank*

## Certificate of Compliance with Circuit Rule 32-1

I certify that:

This brief complies with the length limits permitted by Ninth Circuit Rule 32-1. The brief is 12,771 words, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Executed on August 5, 2020.

*/s/ Theodore H. Frank*
Theodore H. Frank

## Proof of Service

I hereby certify that on August 5, 2020, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will provide notification of such filing to all who are ECF-registered filers.

/s/ *Theodore H. Frank*
Theodore H. Frank